FRANCISCO VÁZQUEZ, INC., demandante y recurrida, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-73-264      *Resuelto:* 14 de febrero de 1975

*Myriam Naveira de Rodón, Procuradora General, Peter Ortiz, Procurador General Interino, y Adolfo J. Vila, Procurador General Auxiliar,* abogados del recurrente; *Diego Guerrero-Noble y Jorge Luis Guerrero Calderón,* abogados de la recurrida.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

El Secretario de Hacienda notificó una deficiencia a Francisco Vázquez, Inc. La corporación acudió al Tribunal Superior. El caso se falló a favor de la contribuyente. Accedimos a la revisión solicitada por el Secretario.

Pendiente ante este Tribunal el recurso, la Asamblea Legislativa aprobó la Ley Núm. 24 de 1ro. de mayo de 1974. Dispuso dicho estatuto que "Por la presente se releva a todo contribuyente que en o antes del 30 de junio de 1974 pague en su totalidad cualquier clase de contribuciones sobre la propiedad mueble o inmueble, ingresos, herencias, caudales relictos, donaciones o arbitrios por él adeudados al Estado Libre Asociado de Puerto Rico a la fecha de vigencia de esta ley, del pago de todos los intereses, penalidades y recargos acumulados sobre la clase de contribuciones así pagadas y hasta la fecha del pago de las mismas, excepto aquellas penalidades, intereses y recargos acumulados en casos de fraude."

La contribuyente se acogió a los beneficios de dicho estatuto, no obstante haberle informado el Secretario que "La Ley no contemplaba que el contribuyente podía pagar la contribución adeudada, quedando ésta sujeta al resultado final del litigio." Pagó la deficiencia ascendente a $39,548.24, siendo relevada del pago de $43,711.78 de intereses y penalidades que se había acumulado hasta el 30 de junio de 1974.

El 1ro. de julio de 1974 la contribuyente radicó un escrito ante este Tribunal informando que se había acogido a lo dispuesto en la ley antes mencionada, pero suplicaba al Tri-

bunal que continuara con los procedimientos de este litigio, confirmara la sentencia del Tribunal recurrido y concediera a la contribuyente cualquier otro remedio que procediere. El Secretario se ha opuesto.

La contribuyente apuntala su posición sobre unas expresiones aisladas de algunos representantes vertidas en el hemiciclo de la Cámara al considerar el P. de la C. 1094, que se convirtió en la Ley Núm. 24 antes citada. Más adelante transcribimos lo relacionado con este debate.

■ Aparte de que es regla generalmente aceptada que las expresiones de un legislador, en el hemiciclo del cuerpo legislativo a que pertenece, no son suficientemente representativas de la intención colectiva del cuerpo que aprueba el estatuto, *Zuber* v. *Allen*, 396 U.S. 168, 186 (1969); *United States* v. *Trans-Missouri Freight Association*, 166 U.S. 290, 318 (1897); *Aldridge et al.* v. *Williams*, 3 How. (44 U.S.) 8, 23 (1945); *Woollcott* v. *Shubert*, 217 N.Y. 212, 111 N.E. 829, 831 (1916); McCaffrey, *Statutory Construction*, § 37, p. 75, 1953; Nutting, Elliot, Dickerson, *Legislation Cases & Materials*, pág. 414 (1969); 2A Sutherland, *Statutory Construction*, § 48.16, pág. 216 (1973), un examen de la historia legislativa del proyecto que se convirtió en la Ley Núm. 24 demuestra que no fue la intención legislativa permitir a un contribuyente acogerse a los beneficios que concede dicha ley y a la vez continuar adelante con un litigio pendiente, mediante el cual impugna las contribuciones objeto de las deficiencias tasadas.

La lectura del debate parlamentario no sostiene lo propugnado por la contribuyente. Surge del debate que el Presidente de la Comisión de Hacienda, Sr. Corujo Collazo, manifestó al comenzar a explicar el proyecto:

"En primer lugar, sobre los que están en Corte, el procedimiento de recurrir a la vía judicial a litigar el pago de contribuciones es un procedimiento que lo inicia el contribuyente. Si él desea litigarla, pues, él recurre al tribunal, pero él puede

desistir también. Si cree que esta medida le beneficia y él cree que es conveniente para él desistir del pleito, una vez desista puede pedir que se le tase la contribución con los intereses y penalidades al momento del desistimiento voluntario del pleito, y puede acogerse, siempre y cuando que lo haga—claro—dentro del período que establece la Ley que puede pagarse."

Esta, como las demás, citas corresponden al *Diario de Sesiones* de la Cámara de Representantes del 15 de abril de 1974.

Más adelante el representante Viera Martínez le pregunta: "Pero supongamos que la terminación del pleito recae después del 30 de junio de '74 y se confirma la imposición de la contribución hecha por el Secretario de Hacienda, ¿no está acogido ese contribuyente?" y el Representante Corujo Collazo contesta "No, no está acogido porque la persona en ese caso optó por seguir litigando y no por pagarla, conforme a esta Ley. Es una decisión de la persona litigante. O sea, esta Ley le ofrece un alivio aún a aquellas personas que están litigando; pero si esa persona opta por defender su derecho en Corte y vencer en juicio los dictámenes del Secretario de Hacienda y no quiere acogerse a esta disposición pues, no. . ." y más adelante recalca, "No, la intención legislativa no es que se consigne, es que se pague. O sea, que se termine la deuda contributiva con el Estado, con el saldo total."

Luego del Sr. Corujo dejar establecido tan claramente la intención legislativa de que al acogerse el contribuyente a los beneficios de la Ley Núm. 24 era imprescindible desistir del pleito, el Representante Rivera Ortiz manifiesta que "en relación con las personas que tienen pleitos contributivos ante los tribunales de justicia creo, que realmente, se comete una injusticia con estas personas que por el hecho de que no están conformes con lo que les ha impuesto el Secretario de Hacienda no podría acogerse a las disposiciones de este proyecto, porque no va a pagar." Propone entonces una enmienda al proyecto y solicita un receso para discutir la cuestion con el

Presidente de la Comisión de Hacienda. Luego del receso el Sr. Rivera Ortiz retira "nuestra moción que habíamos anunciado para enmiendas" y se desarrolla el siguiente diálogo donde aparecen subrayadas las expresiones en que la contribuyente se funda para sostener que la ley se aplica a los contribuyentes que tienen casos pendientes, permitiendo pagar la contribución sin los intereses y recargos sujeto al resultado del pleito:

"SR. CORUJO COLLAZO: Señor Presidente, *sobre los casos que van a corte, este Proyecto cubre también la situación de un contribuyente que esté ejerciendo el derecho como contribuyente de litigar con el Secretario el pago de una contribución.* Claro, nada impide esta Medida de que se estipule entre las partes litigantes en el Tribunal el pago de unos intereses, unos recargos y unas penalidades que se estén litigando sujeto a una decisión final del Tribunal. Pero para acogerse a las disposiciones de esta Ley, si esa persona que hace esa estipulación y esa estipulación, por supuesto es aceptada por el Tribunal conforme a los procedimientos legales, paga esos recargos, esos intereses, esas penalidades que puedan recaer en su día sobre la contribución que él litiga y eventualmente vence al Secretario en el pleito, podría reclamar esa partida como reintegro; todo eso sujeto a una estipulación desde las partes litigantes, con la aprobación del Tribunal; y así podría acogerse a las disposiciones de esta Ley. *Pero esta Ley en ningún momento piensa estimular que las partes que tengan derecho a litigar dejen de litigar.*

SR. VIERA MARTÍNEZ: Señor Presidente.

SR. PRESIDENTE ACC: Compañero Viera, adelante.

SR. VIERA MARTÍNEZ: O sea, que si el contribuyente y el Secretario de Hacienda—con la venia de la Presidencia—pueden estipular el pago de los intereses sujeto a las resultancias del pleito. ¿Es así, intereses, recargos y lo demás que dice el Proyecto?

SR. CORUJO COLLAZO: Intereses, recargos y penalidades; claro, sujeto al pleito en sí; porque si es un pleito donde se impugna el pago de una contribución, en ese caso sí, no en los casos de reintegro.

SR. VIERA MARTÍNEZ: *No, no, me refiero a donde se impone una contribución, podría estipularse el pago de intereses, pena-*

*lidades y recargos, si las hubiere, sujeto al resultado final del pleito.*

SR. CORUJO COLLAZO: *Correcto, e inclusive estipularse y pagarse la contribución que se litiga porque lo que busca el Proyecto es el pago de contribuciones.*

SR. VIERA MARTÍNEZ: *Por eso, pero el pago está sujeto a la resultancia del pleito.*

SR. CORUJO COLLAZO: *Bien, si resulta eventualmente que el contribuyente vence al Secretario y no adeuda la contribución, tiene derecho a un reintegro."*

A poco que se examine lo expuesto por los legisladores, después del receso—ya que lo manifestado antes del receso por el Presidente de la Comisión no deja lugar a dudas en cuanto a que para que un contribuyente pueda acogerse a los beneficios de la ley tiene que desistir del pleito—surge que el contribuyente tendría que pagar la contribución y estipular el pago de los intereses, penalidades y recargos, cosa que no hizo la contribuyente en el presente caso. Pero surge algo más. La aplicación de la ley en la forma que ellos proponen solo tiene el efecto de hacerla inefectiva en cuanto a los contribuyentes que tuvieran pleitos pendientes ya que requeriría que pagaran mediante estipulación de las partes aprobada por el tribunal, la contribución, más los intereses y recargos. Si el contribuyente pierde el pleito, claro es, que no tiene derecho a que se le reintegre la contribución y los intereses y recargos que pagó mediante estipulación. Si lo gana, tendría derecho a que se le reintegren los intereses, penalidades y recargos más la contribución. El propósito de la ley queda frustrado. El Estado pierde de cobrar la contribución si prevalece el contribuyente y el contribuyente pierde los intereses, penalidades y recargos si el Estado triunfa. Ni el uno ni el otro se benefician.

Es evidente de los informes de las Comisiones de Hacienda de ambos cuerpos legislativos que el propósito de la medida que consideramos es levantar fondos para el pago de las obligaciones del Estado y el Estado para promover que los contri-

buyentes paguen las contribuciones atrasadas les hace una concesión, dispensarlos del pago de los intereses, penalidades y recargos. Ambos se benefician. Así reza el informe de la Comisión de Hacienda de la Cámara: "es de conocimiento público [que] el Estado necesita fondos para el pago de sus obligaciones. Mediante esta medida se aceleraría el pago de las contribuciones adeudadas. El problema de la deuda contributiva en Puerto Rico es uno cuya solución demanda la aprobación de una medida que al mismo tiempo constituya un alivio contributivo y un estímulo para facilitar el cobro de ciertas contribuciones adeudadas a la fecha de aprobación de tal medida." Y el Reglamento aprobado por el Secretario de Hacienda y promulgado por el Gobernador bajo las disposiciones de la Ley Núm. 24 dispone en su artículo sexto que: "El contribuyente que se acogiere a los beneficios de esta Ley, acepta como final el pago que hiciere." [1]

Evidentemente nunca fue el propósito de esta medida legislativa proveer un seguro de riesgos contra el pago de intereses, penalidades y recargos para que los contribuyentes pudiesen litigar sus casos sin que tuvieran que pagar por dichos conceptos de no prevalecer.

■ A pesar de que era evidente que la contribuyente no tenía derecho a proseguir el pleito después de acogerse al alivio que proveía la Ley Núm. 24, optó por pagar la contribución sin penalidades e intereses. Tal acción pone fin al litigio que iniciara la contribuyente y deja sin efecto la sentencia dictada por el Tribunal Superior, Sala de San Juan. *Se procederá a archivar el presente recurso.*

El Juez Asociado Señor Martín emitió opinión concurrente con la cual concurren los Jueces Asociados Señores Díaz Cruz e Irizarry Yunqué. El Juez Asociado Señor Díaz Cruz emitió también opinión concurrente.

---

[1] Orden Ejecutiva 2031 de 14 de mayo de 1974, expedientes 1791 y 1797 Departamento de Estado.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Martín con la cual concurren los Jueces Asociados Señores Díaz Cruz e Irizarry Yunqué.

San Juan, Puerto Rico, a 13 de febrero de 1975

Concurro con el resultado de la opinión emitida por el Tribunal en el día de hoy. La Ley Núm. 24 aprobada en 1° de mayo de 1974 tiene como propósito, según reza su propio texto, el relevar al contribuyente del pago de intereses, penalidades y recargos acumulados sobre contribuciones adeudadas que se pagaren en su totalidad en o antes del 30 junio de 1974. [1]

Según los informes rendidos por las Comisiones de Hacienda de la Cámara de Representantes [2] y del Senado, [3] la medida aludida iba dirigida a acelerar el pago de las contribuciones adeudadas para conjurar la carencia de fondos que padecía el Estado, y constituiría además un estímulo para facilitar el cobro de las contribuciones adeudadas por aquellos contribuyentes que por ignorancia, falta de recursos o simplemente ausencia de conciencia social no las habían pagado a su debido tiempo. Se reconoce en dichos informes que la adición de penalidades, intereses y recargos a la contribución adeudada, en algunos casos, impedía a los contribuyentes el saldo de la misma.

El texto de la ley es sencillo, corto y claro y aparece transcrito en la opinión del Tribunal. No debe haber duda de que el único fin que perseguía la ley era el de recaudar la mayor cantidad posible de contribuciones adeudadas antes del día 30 de junio de 1974 para allegar fondos que el Estado necesi-

---

[1] Los casos en que hubiera fraude envuelto no estaban cubiertos por la referida Ley.

[2] Informe Comisión de Hacienda de la Cámara, 7ª Asamblea Legislativa, 2ª Sesión Ordinaria, 10 de abril de 1974.

[3] Informe Comisión de Hacienda del Senado, *id.*, 22 de abril de 1974.

taba urgentemente. La Ley Núm. 24 específicamente autorizaba al saldo de la totalidad de la contribución adeudada, y no la aplicación de la suma pagada a contribuciones cuya validez estuviese en cuestión. Para estas la ley ofrece dos remedios clásicos. Uno de dichos remedios para la impugnación de una contribución tasada lo es el acudir al Tribunal Superior dentro del término y bajo las condiciones que fija la ley. 4 L.P.R.A. sec. 121 (a) (2) ; 13 L.P.R.A. sec. 3272. Dentro del procedimiento de impugnación de la contribución tasada el contribuyente puede optar por pagar la parte de la contribución con la cual estuviere conforme y litigar el resto, y prestar fianza por la parte impugnada; o en su defecto prestar fianza por la totalidad de la deuda impugnada, incluyendo intereses, recargos y penalidades El otro remedio que tiene el contribuyente disponible lo es la vía de reintegro, para lo cual es necesario efectuar el pago de lo adeudado, incluyendo intereses, recargos y penalidades, y solicitar entonces el reintegro administrativamente antes de recurrir al Tribunal Superior dentro del término y en la forma que expresa la ley, 4 L.P.R.A. sec. 121 (a) (2) ; 13 L.P.R.A. secs. 282 (A) (6), 286–289.

El contribuyente en este caso escogió el primer remedio recurriendo al Tribunal Superior y afianzando el importe de la contribución tasada (surgida por imposición de deficiencia) más el montante de los intereses, recargos y penalidades El Tribunal Superior falló a su favor dejando sin efecto la deficiencia imputada. El Secretario de Hacienda acudió ante nos en revisión. Expedimos el auto para revisar. En el entretanto se aprobó la Ley Núm. 24 que ofrecía al contribuyente la oportunidad de pagar la contribución tasada sin tener que pagar los intereses, recargos y penalidades que en su caso montaban a una suma mayor que el importe de la contribución propiamente. El contribuyente optó por acogerse a los beneficios de la Ley Núm. 24, por lo que quedó exonerado del pago de los intereses, recargos y penalidades. La intención del

contribuyente al pagar la contribución fue la de asegurarse de que quedaba liberado del pago de intereses, recargos y penalidades pero alega que le quedaba aún la oportunidad de solicitar el reintegro de la contribución pagada si en última instancia vencía en el pleito pendiente ante nos, y eso lo plantea en moción informativa que presenta en esta etapa del procedimiento de revisión.

Se olvidaba el contribuyente que el impugnar la contribución tasada en este pleito se había cerrado las puertas del remedio de reintegro. Normalmente, la utilización del remedio de litigar mediante afianzamiento excluye el de reintegro pues de permitirse el uso de ambos remedios alternativos se estaría tratando de relitigar la misma cuestión so pretexto de otra causa de acción. Aunque no se considera técnicamente como *res judicata*, la jurisprudencia en casos contributivos ha reconocido la doctrina de impedimento colateral por sentencia. *Capó Sánchez* v. *Srio. de Hacienda*, 90 D.P.R. 149 (1964). En este caso se produce la situación anómala en que el contribuyente paga bajo la Ley Núm. 24 y aplaza la solicitud de reintegro hasta la resultancia del pleito original en que impugna la contribución. O sea, su intención fue la de acogerse a los beneficios de la Ley Núm. 24, en adición al remedio ya utilizado de impugnar la contribución mediante afianzamiento, y reservarse además el derecho a un reintegro de lo pagado si venciere en el pleito ante nos.

Pero habiendo pagado la totalidad de la contribución impugnada, dentro del término que dispone la Ley Núm. 24, el Secretario de Hacienda se dio por pagado, lo que hizo el pleito académico. Pero según ha quedado explicado perdió el contribuyente el derecho al reintegro y perdió además el derecho a continuar el pleito de impugnación ya que no quedaba nada que impugnar. El litigio llegó a su fin y su desestimación es de rigor.

El interpretar el estatuto en el sentido de autorizar el pago condicional de la totalidad de la contribución adeudada

para continuar litigando la validez de la misma, daría al traste con el propósito fundamental de la ley de aunar fondos para el pago urgente de obligaciones gubernamentales. La letra de la ley, interpretada en la forma más racional y justa para darle sentido a su propósito, cierra las puertas a posibles litigios en impugnación de la cantidad pagada. Véanse 31 L.P.R.A. sec. 14; *Atiles, Admor.* v. *Comisión Industrial*, 77 D.P.R. 16, 20 (1954); *Clínica Juliá* v. *Sec. de Hacienda*, 76 D.P.R. 509, 520 (1954).

El contribuyente parece creer que puede pagar la contribución bajo protesta o bajo condición. Pero, ni la Ley de Contribuciones sobre Ingresos de 1954, 13 L.P.R.A. sec. 3001 *et seq.*, ni las disposiciones sobre procedimientos judiciales en relación con contribuciones sobre ingresos, 4 L.P.R.A. sec. 121(a)(2), 13 L.P.R.A. sec. 261 *et seq.*, conceden significación especial al pago bajo protesta o condición. Por otro lado, cualquier contribución que haya sido pagada indebidamente o en exceso o cobrada ilegalmente puede ser recobrada mediante solicitud de reintegro dentro del término y bajo las condiciones fijadas por ley. 4 L.P.R.A. sec. 121(a)(2); 13 L.P.R.A. secs. 282(A)(6), 286–289. Veamos cuál fue la naturaleza del pago efectuado bajo la Ley Núm. 24 por el contribuyente en este caso y sus implicaciones a la luz de las disposiciones sobre reintegro, y el efecto que dicho pago pueda tener sobre el pleito de impugnación de deficiencia que es objeto de este recurso. La cantidad pagada bajo la Ley Núm. 24 no sería recobrable eventualmente por vía de reintegro por las razones que pasamos a mencionar. No se trata de pago indebido pues fue hecho con la intención expresa de acogerse a los beneficios que ofrecía la Ley Núm. 24. No fue un pago en exceso pues precisamente el contribuyente se economizaba los intereses, recargos y penalidades, que resultaban ser aún mayores en cuantía que la propia contribución. Tampoco constituyó un cobro ilegal pues el contribuyente no estaba obligado por ley a hacer el pago bajo la Ley Núm. 24,

sino por el contrario constituyó un pago voluntario en ánimo de beneficiarse de sus disposiciones. Los beneficios que otorga la Ley Núm. 24 constituyen una gracia legislativa que ha de interpretarse restrictivamente, por lo que su significado no debe extenderse más allá de los propios términos del estatuto. *Industria Lechera* v. *Srio. de Hacienda,* 95 D.P.R. 839 (1968); *Esso Standard Oil* v. *A.P.P.R.,* 95 D.P.R. 772 (1968); *Cámara de Comercio* v. *Tribl. de Contribuciones,* 67 D.P.R. 427 (1947); *Asociación de Maestros* v. *Sancho Bonet, Tes.,* 54 D.P.R. 536 (1939).

Fortalece aún más la interpretación que hago de la Ley Núm. 24 la disposición reglamentaria incorporada por el Secretario de Hacienda en el Reglamento para la ejecución de dicha Ley al efecto de que: "El contribuyente que se acogiere a los beneficios de esta Ley acepta como final el pago que hiciere." (4) Es evidente que ello significa que los remedios sobre impugnación de la contribución así pagada no están disponibles.

El contribuyente en este caso alega que unas expresiones hechas por dos legisladores en el hemiciclo de la Cámara de Representantes mientras se discutía el proyecto que luego se convirtió en la Ley Núm. 24 le permiten continuar su litigio impugnando la deficiencia objeto del presente recurso; y de resultar vencedor le correspondería un reintegro de la suma pagada bajo la ley en cuestión. No estoy de acuerdo. La opinión del tribunal dice correctamente que las expresiones de un legislador (en este caso dos) no son suficientemente representativas de la intención colectiva de la Cámara de Repre-

---

(4) "REGLAMENTO: Para la Ejecución de la Ley Núm. 24, aprobada en 1° de mayo de 1974, titulada: 'Ley para conceder a todo contribuyente que en o antes del 30 de junio de 1974 pague en su totalidad ciertas clases de contribuciones por él adeudadas al Estado Libre Asociado de Puerto Rico a la fecha de vigencia de la ley, un alivio contributivo mediante el relevo de ciertos intereses, penalidades y recargos acumulados o que se acumulen sobre tales contribuciones hasta el 30 de junio de 1974.' ", promulgado por el Secretario de Hacienda en 10 de mayo de 1974, Art. 6.

sentantes. En el Senado no surgen expresiones algunas en el hemiciclo durante la discusión del proyecto. Más aún, un examen de las manifestaciones de los legisladores aludidos revelan que las mismas son confusas y a la vez contradictorias, y por momentos tienden a sostener la posición del contribuyente y otras veces la del Estado. No pueden pues utilizarse para sostener ningún punto de vista.

—O—

Opinión concurrente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 14 de febrero de 1975

El contribuyente utilizando los remedios ortodoxos estatuidos para objetar el pago de una deficiencia en contribución sobre ingresos, obtuvo sentencia a su favor en el tribunal de instancia, de la cual recurrió el Secretario de Hacienda a este Tribunal. Hallándose pendiente el recurso se aprobó por la Asamblea Legislativa la Ley Núm. 24 de 1 de mayo de 1974 que ". . . releva a todo contribuyente que en o antes del 30 de junio de 1974 pague en su totalidad cualquier clase de contribuciones sobre la propiedad mueble o inmueble, ingresos, herencias, caudales relictos, donaciones o arbitrios por él adeudadas al Estado Libre Asociado de Puerto Rico a la fecha de vigencia de esta ley, del pago de todos los intereses, penalidades y recargos acumulados sobre la clase de las contribuciones así pagadas y hasta la fecha del pago de las mismas, excepto aquellas penalidades, intereses y recargos acumulados en casos de fraude."

El contribuyente se acogió al alivio concedido por dicha Ley Núm. 24, pagó al erario público la suma de $39,548.24 y le fueron condonados $43,711.78 de intereses y penalidades acumulados. Se opone, sin embargo, al archivo del pleito alimentando la posibilidad de que de confirmarse la sentencia del Tribunal Superior, obtenga la devolución de lo pagado con los intereses legales correspondientes.

La posición del contribuyente recurrido es de transparente ventaja que no tiene lugar ni en la recta administración de los recursos fiscales del Estado ni en los preceptos del Código Civil que gobiernan esta situación. A éstos hemos de acudir sin detenernos en el historial legislativo de la medida de cuyo debate entresacan ambas partes con igual autoridad conceptos y expresiones inconclusos.

Al aprobarse la Ley Núm. 24 de 1974, el Estado puso al alcance del contribuyente una solución alternativa, un remedio adicional y distinto al ortodoxo que ya había invocado. Tuvo la virtualidad de una proposición para transigir la deuda contributiva determinada por Hacienda, mediante un pago limitado a su principal, que era como hemos visto una cantidad sustancialmente menor que los intereses y penalidades condonados. Ofreció el Gobierno una elección de remedios al contribuyente sin elemento alguno de compulsión. El contribuyente, en una decisión que a las claras favorece su mejor conveniencia, escogió la opción de pagar y obtener el relevo de intereses y recargos. Quien tiene a su disposición una elección de remedios y escoge uno, no podrá reclamar beneficio ulterior bajo el otro que libremente postergó. *Vázquez* v. *Santos*, 40 D.P.R. 53 (1929). Explicando el principio de elección de remedios, dijo el Juez Hutchinson: " 'Usted no puede comerse la torta y tenerla todavía.' La ley dice al demandante, usted no puede hacer una elección final entre dos remedios inconsistentes y retener su opción. Cuando Ud. ha seguido tal remedio hasta su terminación, o proseguido con él hasta un punto donde la equidad y la conciencia requieren que se considere que usted ha hecho una elección final, entonces Ud. ha renunciado su derecho al otro remedio." *Gandía* v. *Stubbe*, 34 D.P.R. 858, 867 (1926).

Aparte de la pared procesal de elección de remedios, de la hechura del propio contribuyente recurrido, los actos de las partes en este caso lo configuran como un contrato de transacción. Dicho contrato, definido en el Art. 1709 del Código

Civil (31 L.P.R.A. sec. 4821) no sucumbe a la rigidez de formalidad externa de ninguna clase; viene a ser, por consiguiente, uno de los contratos comprendidos en el Art. 1230 del Código Civil (31 L.P.R.A. sec. 3451) que proclama la espiritualidad de la contratación: la de ser obligatorios, cualquiera que fuere la forma de su celebración, siempre que concurran las condiciones esenciales para su validez. Arts. 1206, 1210 y 1213 del Código Civil (31 L.P.R.A. secs. 3371, 3375 y 3391).

El contrato de transacción es esencialmente consensual porque se perfecciona con el mero consentimiento de las partes que lo celebran surtiendo desde entonces todos los efectos jurídicos correspondientes. Manresa, *Comentarios al Código Civil Español*, To. XII, pág. 98, ed. 1951; Scaevola, *Código Civil*, To. 28, págs. 272 y ss., ed. 1953. La transacción no exige que sus términos se consignen explícitamente en el documento que la prohija. El Art. 1714 la extiende a aquellos objetos que por inducción necesaria deban reputarse comprendidos en la misma. Un leve ejercicio de lógica nos lleva a la conclusión de que si el Estado ofreció una condonación de intereses a cambio de obtener fondos que necesita con premura, [1] superando para ello la ineludible aprensión ética de dicha concesión, no va a permitir el privilegio adicional de dejar vivo el pleito instado por el contribuyente beneficiado.

Es característica adicional de la transacción poner fin a la incertidumbre de una relación jurídica convirtiéndose en sustitutivo de la sentencia. Bonet y Ramón, *Código Civil Comentado*, pág. 1430, 2da. ed. 1964.

---

[1] El informe de la Comisión de Hacienda de la Cámara al someter el proyecto dice: "es de conocimiento público [que] el Estado necesita fondos para el pago de sus obligaciones. Mediante esta medida se aceleraría el pago de las contribuciones adeudadas. El problema de la deuda contributiva en Puerto Rico es uno cuya solución demanda la aprobación de una medida que al mismo tiempo constituye un alivio contributivo y un estímulo para facilitar el cobro de ciertas contribuciones adeudadas a la fecha de aprobación de tal medida."

Por haber el contribuyente elegido a su libérrima voluntad entre litigar o transigir, optando por este último remedio, resolvió la cuestión litigiosa y terminó el pleito. El que transige, enajena.

Concurro con la opinión del Tribunal disponiendo que el caso sea archivado.